**AFFIDAVIT**

I, KAREN COTTRELL, being duly sworn, depose and state as follows:

**INTRODUCTION**

1. I, Karen Cottrell, am a Special Agent of the Department of the Treasury, Office of Inspector General, Office of Investigations, assigned to the Washington D.C. Field Office, and have been a Special Agent for approximately 5 years. Prior to becoming a Special Agent, I served as an Inspector with the U.S. Customs Service for more than four years. I am a graduate of the Basic Criminal Investigator and Inspector General Training Programs at the Federal Law Enforcement Training Center in Brunswick, Georgia. I have also completed the Inspector General Academy training course on Public Corruption. My training and experience have included public corruption and white-collar fraud investigations. As a federal agent, I am authorized to investigate violations of the laws of the United States and execute warrants issued under the authority of the United States.

2. The facts and information contained in this affidavit are based upon my knowledge and observations, information received from other individuals including cooperating witnesses, and other law enforcement officers (including Mike Uebel, Lead Investigator, United States Bureau of Printing and Engraving, and Special Agent Sean E. Hubbard with the Department of Treasury, Office of Inspector General, Office of Investigations), and information gained from my training and experience.

3. This affidavit is submitted in support of an application for an arrest warrant for David C. Faison for violating 18 U.S.C. § 641 by knowingly stealing and converting to his own use a thing of value of the United States, the Bureau of Engraving and Printing, and the Department of the Treasury–to wit 10 sheets of partially printed $100 Federal Reserve

Notes. The Affidavit does not set forth all information known to the Office of Inspector General or the Federal Bureau of Investigation about this case and is being submitted solely for the purpose of providing sufficient information to establish probable cause for the issuance of a warrant to arrest David C. Faison for theft of government property in violation of 18 U.S.C. § 641

4. Based upon the investigation described below, I submit that the facts set forth in this affidavit establish that there is probable cause to conclude that David C. Faison, in the District of Columbia and elsewhere, violated 18 U.S.C. § 641 by willfully and knowingly stealing and purloining a thing of value in excess of $1,000 that constituted goods and property of the United States, the Bureau of Engraving and Printing, and the Department of the Treasury–to wit 10 sheets of partially printed $100 Federal Reserve Notes.

**STATEMENT OF FACTS SUPPORTING PROBABLE CAUSE**

<u>Background information on the Bureau of Engraving and Printing and David C. Faison</u>

5. The Bureau of Engraving and Printing ("BEP") is the bureau of the United States Department of the Treasury that manufactures currency and other securities of the United States, including Federal Reserve Notes (FRN). The BEP is located at Bureau of Engraving and Printing Annex Building, 14th and C Streets, SW, Washington D.C. 20228.

6. David C. Faison ("Faison") is employed by the BEP as a Stock Control Recorder. As a Stock Control Recorder, Faison is responsible for distributing currency paper stock throughout the BEP, which allows him regular access to Plate Printing Section 2 within the BEP, where sheets of $100 FRNs ("$100 bills") are produced. It is common for BEP employees like Faison to utilize unique BEP issued gloves to perform their duties. These BEP issued gloves are made of a white cloth material with what appears to be a

"rubberized" gray material affixed to the palmside of the gloves which covers the sides and fronts of the fingers to make handling currency easier. The gloves have a black manufacturer's emblem on the back of the glove, and dark colored piping around the opening of the gloves. David Faison utilizes locker #16 located in Room 410A at the Bureau of Engraving and Printing Annex Building, 14th and C Streets, SW, Washington D.C. 20228.

      7.      During the process of manufacturing $100 bills, Plate Printing Section 2 processes sheets of currency paper which each contain 32 uncut, partially printed $100 bills. At this stage of the manufacturing process, the 32 partially printed uncut $100 bills on each sheet of currency paper appear to be completed $100 bills with the exception that the bills do not yet have serial numbers or Treasury Seals stamped upon them. The bills do contain plate numbers and note position indicators.

<u>Evidence of Theft of Nine Sheets of Partially Printed $100 bills</u>

      8.      During the investigation, the Office of Inspector General for the Department of the Treasury was provided with 145 partially printed $100 bills, which did not have serials numbers or Treasury Seals on them but did contain plate numbers and note position indicators, that had been passed between on or about May 29, 2006, and July 29, 2006 at the following casinos: Midway Slots (Harrington, DE), Dover Downs Slots (Dover, DE), Bally's (Atlantic City, NJ), Trump Plaza (Atlantic City, NJ), Delaware Park (Wilmington, DE), and Charles Town Races and Slots (Charles Town, WV).

9.    During the investigation BEP Lead Investigator Mike Uebel examined the 145 partially printed $100 bills which had been passed at the aforementioned casinos. Based upon his examination of the $100 bills and his training and experience, Investigator Uebel determined that the 145 notes were cut from nine sheets of $100 bills that had been processed in Plate Printing Section 2 within the BEP. Investigator Uebel based this determination upon his analysis of the front and back plate number and the note position indicator which appeared on each of the partially printed $100 bills that he examined. Investigator Uebel observed that the $100 bills he examined were not machine cut, and appeared to be cut with scissors. Based upon this evidence, there is probable cause to believe that nine sheets of partially printed $100 bills were stolen from the BEP in or about the period May through July 2006.

10.    Because each uncut sheet of $100 bills at BEP contains 32 $100 bills, Investigator Uebel reported that a theft of nine sheets of uncut partially printed bills from BEP would mean that 288 partially printed $100 bills with a face value of approximately $28,800 had been stolen. At present, investigation has revealed that only 145 of the 288 $100 bills that would have been contained on the nine sheets of $100 bills printed at BEP have been passed and recovered.

Evidence of Faison's Theft of Numerous Sheets of Partially Printed $100 Bills

11.    On July 8, 2006, Midway Slots determined that slot machine #2-58 had received four $100 bills with no serial numbers. Midway Slots personnel reviewed the slot machine records for periods when $100 bills were inserted into machine #2-58 and discovered that at 8:09 p.m., three $100 bills were inserted within 19 seconds. At 8:10 p.m., slot machine #2-58 issued a cash ticket in the amount of $290 to the person playing the

machine at that time. Dave Zerbe, a Surveillance Manager for Midway Slots, retrieved surveillance video for slot machine #2-58 which covered the time period during which the three $100 bills were inserted into the machine. I have reviewed this surveillance video. The surveillance video shows Faison sitting at slot machine #2-58. Faison is wearing what appeared to be BEP issued gloves. Faison redeemed the $290 cash ticket printed by slot machine #2-58 at a ticket redemption machine.

12. On July 19, 2006, Midway Slots determined that slot machines #2-022 and #2-052 had received in total nine $100 bills which did not contain serial numbers. Midway Slots retrieved the surveillance video for slot machines #2-022 and #2-052 for the period during which the machines received $100 bills on July 19, 2006. The surveillance video reflects that from on or about 3:16 p.m. to on or about 4:37 p.m. on July 19, 2006, Faison was at slot machine #2-022. The event records for slot machine #2-022 reflect that during the period Faison was at the machine, five $100 bills were inserted into the machine. The surveillance video reflects that from on or about 4:41 p.m. to on or about 5:05 p..m. on July 19, 2006, Faison was at slot machine #2-052. The event records for slot machine #2-052 reflect that during the period Faison was at slot machine #2-052, four $100 bills were inserted into the machine.

13. On July 27, 2006, agents of OIG conducted surveillance of Faison's residence located at XXXXX XXXXX in Largo, Maryland. OIG agents observed Faison leave his residence at XXXXX XXXXX wearing a brown hat, an orange polo shirt, cargo shorts, and sandals. Faison entered his black Chevrolet Trailblazer with Maryland license plate 523M059 and departed. At on or about 5:13 p.m. on July 27, 2006, the Dover Downs Slots surveillance system captured video footage of Faison wearing the same clothing agents had

observed him wearing as he left his residence. Dover Downs Slots surveillance video for July 27, 2006, captured footage of Faison inserting an $100 bill with no serial numbers and no Treasury Seal into a slot machine. Dover Downs security later verified that four $100 bills with no serial numbers or Treasury Seals were inserted into the slot machine that Faison had used on July 27, 2006. Surveillance video reflects that Faison departed Dover Downs in a black Chevrolet Trailblazer.

14. Investigator Uebel reviewed the four $100 bills with no serial numbers or Treasury seals that were recovered from the Dover Downs slot machine that Faison had used on July 27, 2006. Investigator Uebel confirmed that the four $100 bills came from one of the nine sheets that are believed to have been stolen from the BEP.

15. On July 31, 2006, trash from the curb outside of Faison's residence at XXXXX XXXXX in Largo, Maryland was collected and searched. During the search, two scraps of what appeared to be BEP currency paper were found in the trash. Investigator Uebel examined the scraps of paper retrieved during the search and confirmed that the scraps of paper were scraps of specialized currency paper utilized during the BEP currency production process. Crane & Company, Dalton, Massachusetts, is the only authorized manufacturer of currency paper for Federal Reserve Notes. This paper is unique in that it has: (1) registration marks on the border of the sheets of 32 notes; (2) red and blue fibers embedded within the paper; and (3) the consistency of the paper is unlike other paper. This currency paper is not sold to the general public.

16. On August 2, 2006, a search warrant was obtained from the Federal District Court in the District of Maryland to search the residence of Faison located at XXXXX XXXXX in Largo, Maryland for among other things sheets of FRNs which do not contain

serial numbers or Treasury Seals. On August 3, 2006, Special Agents of the Department of Treasury Office of Inspector General and Federal Bureau of Investigation utilized two vehicles to attempt to covertly surveil Faison as he drove from BEP to his home at XXXXX XXXXX in Largo, Maryland at the conclusion of his shift at BEP. As Faison drove onto Tatum Court, he passed the driveway to his residence and turned his vehicle around in the culdesac. After Faison appeared to see the vehicles containing Federal Agents following him, Faison sped away from his home at a high rate of speed.

17.    On August 3, 2006, Special Agents of the Department of the Treasury Office of Inspector General and Federal Bureau of Investigation searched Faison's home at XXXXX XXXXX in Largo, Maryland pursuant to a search warrant issued by a United States Magistrate Judge from the United States District Court for the District of Maryland. During the search, the brother of Faison informed Special Agents of the location of Faison's bedroom in the house. During the search of the closet of Faison's bedroom, a Special Agent discovered 9 complete sheets of 32 partially printed $100 bills, which did not have serial numbers or Treasury Department Seals, and one sheet containing 24 partially printed $100 bills, which did not have serial numbers or Treasury Department Seals. The 10 sheets of partially printed $100 bills were found hidden in wrapping paper that was found in the closet of Faison's basement bedroom. A polo shirt and hat, which appeared to be clothes Faison wore on July 27, 2006, at Dover Down Slots, were also recovered during the search.

WHEREFORE, your affiant believes based on the information provided that there is probable cause to conclude that David C. Faison, in the District of Columbia and elsewhere, violated 18 U.S.C. § 641 by willfully and knowingly stealing and purloining a thing of value in excess of $1,000 that constituted the goods and property of the United States, the Bureau of Engraving and Printing, and the Department of the Treasury–to wit 10 sheets of partially printed $100 Federal Reserve Notes.

The statements above are true and accurate to the best of my knowledge and belief.

_____
Karen Cottrell
Special Agent, Department of Treasury, Office of Inspector General, Office of Investigations

Sworn to before me this _____ day of August 2006.

_____
Honorable Alan Kay
United States Magistrate Judge
District of Columbia